# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 27, 2004 Session

## STATE OF TENNESSEE v. CHRISTY MECHELLE THOMPSON

**Appeal from the Circuit Court for Cocke County**
**No. 9238   Ben W. Hooper, II, Judge**

_____

**No. E2004-00761-CCA-R3-CD - Filed February 7, 2005**

_____

The defendant, Christy Mechelle Thompson,[1] broke into a private residence and stole personal property worth more than $500.00.  The Cocke County Grand Jury indicted her for one count of aggravated burglary and one count of theft over $500.00.  The defendant pled guilty.  As part of her plea agreement, the trial court sentenced the defendant to three (3) years as Range I offender for the aggravated burglary and one (1) year for the theft over $500.00.  She also agreed to pay restitution in the amount of $1,016.85.  Under the plea agreement, the trial court was to determine the method and manner of sentence.  The trial court sentenced the defendant to incarceration with the Tennessee Department of Corrections.  The defendant appeals her sentence, arguing that: (1) the trial court improperly weighed the enhancing and mitigating factors; and (2) the trial court erred in denying the defendant probation.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Keith E. Haas, Newport, Tennessee, for the appellant, Christy Mechelle Thompson.

Paul G. Summers, Attorney General & Reporter; Michelle Chapman McIntire, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General, and James B. Dunn, Assistant District Attorney, for the appellee, State of Tennessee.

---

[1] The indictment in this case reads, "Cristy Mechelle Thompson."  However, the plea agreement signed by the defendant reads, "Kristy Thompson."

**OPINION**

Factual Background

On July 5, 2003, the defendant, Christy Mechelle Thompson, broke into the residence of Kenneth Wilburn, the victim. The victim lived in Cocke County. The defendant stole over $500.00 worth of property, including a black onyx ring, a wedding ring, a rod and reel, a cooler, a pair of pruning shears and many collector coins. The victim mentioned the defendant to police as a potential suspect. Upon being questioned by the police, she admitted her involvement in the burglary.

**ANALYSIS**

The defendant argues two issues in her appeal: (1) whether the trial court improperly weighed the enhancing and mitigating factors; and (2) whether the trial court erred in denying the defendant probation.

**Enhancement and Mitigating Factors**

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

The defendant argues that there was no proof to apply enhancement factors, as enumerated in Tennessee Code Annotated section 40-35-114 and that there were many mitigating factors that should have applied. The defendant argues that the trial court's application of these enhancement and mitigating factors were incorrect. The defendant cites Blakely v. Washington, 524 U.S. __, 124 S. Ct. 2531 (2004), to support this argument.

The defendant agreed in her plea agreement to be sentenced to three (3) years for her aggravated burglary conviction to be served as a Range I offender at thirty percent (30%), with the trial court to determine the method and manner of sentence, to a one (1) year sentence for her theft of more than $500.00 to run concurrent with her three (3) year sentence and restitution for $1,016.85. After holding a sentencing hearing, the trial court sentenced the defendant to serve her sentence in the Tennessee Department of Correction. The trial court did not enumerate any enhancement factors upon which it relied in the sentencing hearing when sentencing the defendant.

The defendant agreed to the minimum sentence for each of her convictions. Aggravated burglary is a Class C felony. Tenn. Code Ann. § 39-14-403. The range of sentence for a Class C felony for a Range I offender is three (3) to six (6) years. Tenn. Code Ann. § 40-35-112(a)(3). Theft of property more than $500.00 but less than $1,000.00 is a Class E felony. Tenn. Code Ann. § 39-14-105. The range of sentence for a Class E felony as a Range I offender is one (1) to two (2) years. Tenn. Code Ann. § 40-35-112(a)(5). The trial court approved this agreement and sentenced the defendant to the minimum sentence for each conviction.

Prior to the release of Blakely, in order to determine a defendant's sentence, a trial court started at the presumptive sentence, enhanced the sentence within the range for existing enhancement factors, and then reduced the sentence within the range for existing mitigating factors in accordance with Tennessee Code Annotated section 40-35-210(e). No particular weight for each factor is prescribed by the statute; the weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our Code and as long as its findings are supported by the record. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). This Court has recently recognized that Blakely "calls into question the continuing validity of our current sentencing scheme." State v. Julius E. Smith, No. E2003-01059-CCA-R3-CD, 2004 WL 1606998, at *4 (Tenn. Crim. App. at Knoxville, July 19, 2004); see also State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 WL 1607002, at *9 (Tenn. Crim. App. at Knoxville, July 19, 2004).

In Blakely, the Supreme Court determined that the "statutory maximum" sentence for Apprendi[2] purposes is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at ___, 124 S. Ct. at 2537. In other words:

> [T]he relevant "statutory maximum" is not the maximum sentence a judge may
> impose after finding additional facts, but the maximum he may impose without any
> additional findings. When a judge inflicts punishment that the jury's verdict alone

---

[2]In Apprendi v. New Jersey, 530 U.S. 466 (2000), the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fat that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In Ring v. Arizona, 536 U.S. 584, 587 (2002), the Court applied Apprendi to hold that because Arizona conditioned eligibility for the death penalty upon the presence of an aggravating fact that was not an element of first degree murder, the Sixth Amendment guaranteed the defendant a right to a jury determination of that fact.

does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

Id.

This Court has acknowledged that Blakely "extended Apprendi's holding that, under the Sixth Amendment, a jury must find all facts used to increase a defendant's sentence beyond the statutory maximum." See State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *8 (Tenn. Crim. App. at Nashville, Oct. 8, 2004). In so doing, this Court went on to state that:

> [N]othing in Apprendi suggested that the phrase "statutory maximum" equated to anything other than the maximum in the range. To the contrary, the United States Supreme Court stated the issue in Apprendi as "whether the 12-year sentence imposed . . . was permissible, given that it was above the 10-year maximum for the offense charged in that count." 530 U.S. at 474, 120 S.Ct. at 2354. We also note that the Supreme Court has considered the retroactive effect of the holding in Ring v. Arizona, 536 U.S. 584, 592-93, 122 S.Ct. 2428, 2435 n.1, 153 L.Ed. 2d 556 (2002), as a new rule for capital cases even though it was based on Apprendi. See Schriro, ___ U.S. at ___, 124 S.Ct. at 2525-27. . . . We conclude that Blakely alters Tennessee courts' interpretation of the phrase "statutory maximum" and establishes a new rule in this state. . . .

Id. at *9.

In the case sub judice, the trial court sentenced the defendant to the minimum sentence within the sentencing range for her convictions. As stated above, Blakely applies in situations where a trial court has used an enhancement factor to increase a defendant's sentence, but that enhancement factor has not been decided by a jury. Clearly, the trial court did not use any enhancement factor to increase her sentence. Therefore, Blakely does not apply to the defendant's sentencing.

The defendant also complains that the trial court did not apply the many mitigating factors that also applied to the defendant's sentence. The defendant was sentenced to the minimum sentences in the range. The application of any mitigating factors could not have lessened her sentence any further. There would be no benefit to the defendant in applying further mitigating factors when her sentence is already the minimum allowed by statute.

For these reasons, this issue is without merit.

**Probation**

A defendant "who is an especially *mitigated offender* or *standard offender* convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the

absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (emphasis added). In choosing among possible sentencing alternatives, the trial court should consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5); State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); see also State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); Dowdy, 894 S.W.2d at 305-06.

When seeking full probation, the burden rests with the defendant to prove his suitability to that manner of sentence. See Tenn. Code Ann. § 40-35-303(b); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1995). "Probation is a privilege or act of grace which may be granted to a defendant who is eligible and worthy of this largesse of law." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990). In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, including physical and mental condition; the deterrent effect on the defendant; and the likelihood that probation is in the best interests of both the public and the defendant. See Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974); State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999).

The trial court stated:
Trying to summarize what it appears that the Court has before it . . . .

The record indicates, of course [the defendant] apparently had a relationship with Mr. Wilburn, had knowledge of his home, I'm sure, and what was in it. She's thirty-five soon to be thirty-six years of age. She's worked. . . .

. . . .

So she apparently has substantial ability to function well in society. She's not in good health. If all of this can be supported she's in terrible health. But as we see time and time again, what is the real problem, a long history of alcohol use and abuse. She states she's not mentally disabled but in fact physically disabled. How much did she drink, she drinks as much as she could get on a daily basis. Said during a period of time, and I'm not sure exactly what the period of time that was, that she could never remember being sober.

She's used marijuana in the past and I think probably really from the 1980's just up until recently. So you've got a young lady that apparently is not as mentally dysfunctional as one might be led to believe. Alcohol and drugs have taken control. She's had three children. Two adopted and one in foster care. Had plenty of work.

And we find ourselves here in the Circuit Court of Cocke County, Tennessee on the charge of burglary and theft. Her sister seems to be a fine person. Probably a kind person, a passionate person for her younger sister. And I don't need to fail to mention that burglaries have become literally, one of the nightmares of this county.

You know, it's just, somebody's breaking into something twenty-four hours a day, seven days a week seems like. It's a terrible problem. And we're standing at the crossroads right now, and this Court is going to find that it is better, Ms. Thompson, for you to be required to build this three year sentence, along with the one year sentence which runs concurrently with it. Because hopefully that will take away your ability to make any of the big decisions that need to be made.

People get into trouble, the family supports them in every way that they can. They go to church and they stop drinking and drugging and it doesn't last because that environment is not structured. I really think that I would be doing you a terrible disservice to put you on probation. That's the reason I'm not putting you on probation.

I think if you can get yourself involved in the programs offered by the Tennessee Department of Corrections, related to getting your GED, completing your education, not to overlook the fact that you've gone to Walters State.

That's in this report. She had the ability to. . [sic] She made the decision to quit going over there. It didn't appear that they told her she didn't have the mental ability to complete any program that they were offering.

But there are drug and alcohol programs that if you are willing to put forth an effort, I think you will come out a much better person. You'll still be under some supervision, obviously, but to leave that in a posture where you make the decision as to whether you want to stay with your sister and follow her rules and regulations, or do you want to go back to where you've been for a number of years, the odds are that you'll be back where you have been for a number of years.

I'm going to do what I can to keep that from happening. So I'm going to let you build the three year sentence for those reasons that I've stated. And you know I've even had people come back and tell me, thank you, for saving my life. I've had mothers come back and say, thank you, for saving my child's life. They all went to the Tennessee Department of Corrections.

There are those that can go and will come back in worse shape maybe than when they went. But if you've got any motivation at all about you, take advantage of the situation and see if you can't improve your quality of life. And that'll be all.

I sentence you to three years to the Tennessee Department of Corrections, one year, that's on the burglary charge, one year on the charge of theft over $500.00, they will run concurrently and restitution of $1016.85, plus the cost of this cause will have to be paid. Now that does conclude the matter and she'll be taken into custody.

As stated above, when reviewing sentencing issues, this court conducts a review with the presumption that the determinations made by the trial court are correct so long as the trial court followed the sentencing procedures. Tenn. Code Ann. § 40-35-401(d). The record supports that the trial court analyzed the relevant factors for denying the defendant's request for probation. Therefore, there is a presumption that the trial court's judgments are correct. It is clear in this case that the trial court believed that the defendant was not a good candidate for probation primarily for her lifetime of drug and alcohol abuse. The trial court stated that the defendant needed a more structured environment to complete her GED. The trial court also stated that the defendant could benefit from a drug and alcohol treatment program, but she should not be able to choose whether to live with her sister or return to her previous way of life. We agree with these assessments by the trial court. In addition, the trial court stated that burglary has become an increasing problem in Cocke County. Obviously, the trial court also denied the defendant probation because it was in the best interest of the community to demonstrate a low tolerance for burglary. We cannot say the record preponderates against the trial court's decision to deny probation.

Therefore, this issue is also without merit.

## CONCLUSION

For the reasons stated above, we affirm the judgments of the trial court.

_____

JERRY L. SMITH, JUDGE